**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 09-60696-CIV-ALTONAGA/Brown**

**UNITED STATES OF AMERICA**
***ex rel.* CAROL A. CULLINS**,

Plaintiff,

vs.

**ASTRA, INC.**,

Defendant.
_______________________________/

**ORDER**

**THIS CAUSE** came before the Court on the Defendant Astra, Inc.'s Motion to Dismiss Amended Complaint (the "Motion") [D.E. 38], filed January 4, 2010. The Court has carefully considered the parties' submissions and the applicable law.

## I. BACKGROUND

The "basic function" of the U.S. Postal Service (the "USPS") is "to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people." 39 U.S.C. § 101(a). The USPS does not bring about this "basic function" alone, however; it retains private contractors to provide postal services as well. To pay each contractor, the USPS submits a certification to its accounting center that identifies the contract USPS entered into and how much the contractor will be paid. The USPS also sends a copy of the certification to the contractor. The contractor usually receives the certifications one to two weeks before the USPS approves and pays the contractor for its services. (*See* Am. Compl. [D.E. 35] ¶ 9).

Astra is a South Florida corporation that provides mail-transporting services to the USPS

during the holiday season. (*See id.* ¶ 3). According to Carol A. Cullins, a former Astra employee, Astra received certifications for numerous contracts in the years 2006–2008 consistent with the payment process described above. (*See id.* ¶ 10 & Ex. A). If the certifications indicated that Astra would be underpaid for its services, Cullins's supervisors would direct her to investigate why and to contact the USPS to ensure that Astra was paid. (*See id.* ¶ 11). But if the certifications indicated that Astra would be paid more for its services than it was owed, "Astra used and caused the USPS to use the certifications to keep and conceal its obligation to repay the overpayments made." (*Id.* ¶ 12). According to spreadsheets that Cullins prepared and kept while she worked at Astra, Astra has retained at least $485,000 in overpayments by the USPS through 2007. (*See id.* ¶¶ 13–14 & Ex. A). And because Astra often kept and used overpayments until the USPS discovered that it had overpaid Astra and requested refunds, Astra has denied the USPS the use of over $1 million for extended periods of time. (*See id.* ¶ 15).

In May 2009 Cullins brought this action individually and on behalf of the United States[1] against Astra under the False Claims Act, 31 U.S.C. §§ 3729–3733. Specifically, Cullins's three-count Amended Complaint alleges that Astra violated 31 U.S.C. § 3729(a)(1), 31 U.S.C. § 3729(a)(2), and 31 U.S.C. § 3729(a)(7). The United States has declined to intervene. Astra now moves to dismiss each count on the ground that none states a claim on which relief may be granted.

## II. LEGAL STANDARD

A complaint brought under the False Claims Act must be pleaded in accordance with Federal Rule of Civil Procedure 9(b). *See Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir.

[1] "A person may bring a civil action for a violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b).

2009); *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308–10 (11th Cir. 2002). "A False Claims Act complaint satisfies Rule 9(b) if it sets forth 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Hopper*, 588 F.3d at 1324 (quoting *Clausen*, 290 F.3d at 1310).

## III. ANALYSIS

In 1863 President Lincoln signed the False Claims Act into law in order to combat "the fraudulent use of government funds during the Civil War." *United States v. Neifert–White Co.*, 390 U.S. 228, 232 (1968); *accord* S. REP. NO. 99-345, at 8 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273. The Act, which is "broadly phrased," reaches "all fraudulent attempts to cause the Government to pay out sums of money." *Neifert–White*, 390 U.S. at 232–33. Congress has amended the Act various times since its enactment — most recently in 2009.[2] Cullins brings this action under the following three subsections:

> (a) Liability for certain acts. — Any person who —
>
> > (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;
> >
> > (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; . . . .
> >
> > (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money

---

[2] The Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617 (codified as amended in scattered sections of 18 and 31 U.S.C.) amended parts of the False Claims Act relevant to this case. Because the amendments do not apply retroactively, *see Hopper*, 588 F.3d at 1327 n.3, all citations refer to the pre-amendment version of the Act.

> or property to the Government,
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . .

31 U.S.C. § 3729.

**A. Count I — 31 U.S.C. § 3729(a)(1)**

Cullins alleges that "Astra knowingly, unlawfully, and wrongfully caused to be submitted the certifications with respect to the contracts" for which the USPS made overpayments, and did so "with knowledge of their falsity to the USPS by failing to inform the USPS that the certifications were false." (Am. Compl. ¶ 17). Cullins also alleges that "Astra had a deliberate scheme to knowingly retain additional excess and unearned government payments until such time as the billing errors were caught by the government and refunds were demanded by the USPS." (*Id.* ¶ 18). According to Astra, Cullins fails to state a claim under 31 U.S.C. § 3729(a)(1) because she does not allege that Astra ever presented or caused to be presented a false claim to the government for payment. (*See* Def.'s Mot. 6).

Section 3729(a)(1) imposes liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." Section 3729(a)(1) "contains a 'presentment clause,'" *Hopper*, 588 F.3d at 1325, and "without the *presentment* of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act," *id.* (quoting *Clausen*, 290 F.3d at 1311 (alterations and internal quotation marks omitted)). "The 'central question' in such a claim 'is whether the defendant ever presented [or caused to be presented] a false or fraudulent claim to

the government.'" *Id.* at 1326 (quoting *Clausen*, 290 F.3d at 1311) (alterations in original)).

Under *Hopper*, the question here is whether Cullins has alleged that Astra presented, or caused to be presented, a false claim to the government. The parties agree Cullins does not allege that Astra *itself* ever presented a false claim to the government. (*See* Pl.'s Resp. [D.E. 45] 6–7; Def.'s Reply [D.E. 47] 1). But that does not make Count I defective because to be liable a person does not need to be the one who actually presents the claim. *See United States v. Mackby*, 261 F.3d 821, 827 (9th Cir. 2001); *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997). The parties disagree, however, about whether Astra ever "caused to be presented" a false claim to the government. According to Cullins, Astra "caused to be submitted the certifications . . . by failing to inform the USPS that the certifications were false." (Am. Compl. ¶ 17). Cullins explains that "when Astra received the certifications and knew that it would be receiving an overpayment, it concealed these facts from the USPS preventing the USPS from making correct payments." (Pl.'s Resp. 6).

As an initial matter, although not directly addressed by the parties, it is doubtful whether the certifications the USPS issued and submitted to its accounting center are "claims" as defined by the Act, which defines "claim" to include "any request or demand . . . for money or property." 31 U.S.C. § 3729(c); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) (defining "claim" as "a call upon the government fisc"). According to the Amended Complaint, the USPS "issue[s] and submit[s] for payment" to its accounting center the certifications, each of which "identifies the contract for which payment a payment request has been made, and the amount requested to be paid." (Am. Compl. ¶ 9). But these certifications do not appear to "request" money or property, *see* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1058 (11th ed. 2005) (defining

"request" as "the act or an instance of asking for something"), and they certainly do not "demand" money or property either, *see id.* at 330 (defining "demand" as "an act of demanding or asking esp. with authority"). To the contrary, as pleaded these certifications appear only to communicate information regarding the payment of governmental contractors between two offices of the USPS. Although courts have interpreted the meaning of "claim" broadly, *see* 1 JOHN T. BOESE, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 2.02[B], at 2-83 to -86 (3d ed. 2010), when analyzing what constitutes a claim, "the focus is on the conduct of the defendant," *Krizek*, 111 F.3d at 939. The Court is unconvinced that the certifications, issued by one office of the USPS and then sent to another, are "claims" as defined by the Act.[3]

But even assuming the certifications are "claims," Cullins's own allegations show that Astra never caused to be presented false claims — here, the certifications — to the government. As stated, it was the USPS that issued and submitted the certificates to its accounting center and sent the certifications to Astra. (*See* Am. Compl. ¶¶ 9–10, 12). Only *then* did Astra allegedly "act" by failing to inform the USPS of its errors. (*See id.*). The false "claims" were therefore issued and submitted, *i.e.*, "presented," *before* Astra is alleged to have taken any action with them. The verb "cause" means "[t]o bring about or effect." BLACK'S LAW DICTIONARY 235 (8th ed. 2004). Apart from her conclusory allegation that Astra "caused to be submitted" the false certifications, *see Hopper*, 588 F.3d at 1327 ("Rule 9(b) requires that actual presentment of a claim be pled with particularity."),

---

[3] The case of *USA ex rel. Brian M. Barrett v. Johnson Controls, Inc.*, No. 3:01-cv-1641-M, 2003 WL 21500400 (N.D. Tex. Apr. 9, 2003), does not help Cullins in this regard. In *Johnson Controls* a relator's complaint survived a Rule 12(b)(6) challenge — but not a Rule 9(b) challenge — where the government issued false data the defendant used when applying for an energy-savings performance contract. But therein lies the difference. In *Johnson Controls* the defendant allegedly *used* the false information, albeit supplied by the government, in applying for a governmental contract or in submitting claims to the government as the winning bidder for the contract. *See id.* *10.

Cullins fails to explain how an event occurring later in time (Astra's use of the certifications) could possibly have caused an event occurring earlier in time (the USPS' submitting inaccurate certifications to its accounting center).

**B. Count II — 31 U.S.C. § 3729(a)(2)**

Cullins alleges that Astra "used the certifications to receive the overpayments" (Am. Compl. ¶ 22), that "claims made to the USPS pursuant to the certifications were false or fraudulent" (*id.* ¶ 23), that "Astra knew that the certifications, and thus claims, to the USPS were false or fraudulent" (*id.* ¶ 24), and that the "claims submitted to the USPS . . . were paid" (*id.* ¶ 25). According to Astra, Count II fails to state a claim because Cullins does not allege that Astra made or used a false record to get a false claim paid by the government. (*See* Def.'s Mot. 6).

Section 3729(a)(2) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." For liability to attach, "a plaintiff must show that (1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant's false record or statement caused the government to actually pay a false claim, either to the defendant itself, or to a third party." *Hopper*, 588 F.3d at 1327. To be sure, "a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim." *Id.* at 1330 (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. —, —, 128 S. Ct. 2123, 2126 (2008)).

Cullins does not allege that Astra made a false record or statement. Rather, Cullins alleges that Astra "used the certifications to receive the overpayments." (Am. Compl. ¶ 22). This allegation

suffers from two defects. First, and as explained earlier, it does not explain with the necessary particularity how Astra "used" the certifications "for the purpose of getting a false claim paid or approved by the government." *Hopper*, 588 F.3d at 1327. The verb "use" means "to put into action or service," "avail onself of," "employ," "to carry out a purpose or action by means of," and "utilize." MERRIAM-WEBSTER'S, *supra*, at 1378 (capitalization altered). Yet according to the allegations, the USPS made the false certifications, sent them to its accounting center and to Astra, and then paid Astra one to two weeks later. Cullins does not allege how Astra put the certifications into action, availed itself of the certifications, or employed the certifications to cause the USPS to pay a false claim — rather, it appears as though Astra only "used" the certifications to obtain advance knowledge that it would be overpaid. That, plainly, is not enough. *See Hopper*, 588 F.3d at 1329 ("[A] [c]omplaint must allege with particularity, pursuant to Rule 9(b), that [a defendant]'s false statements *ultimately led* the government to pay amounts it did not owe." (emphasis added)). Indeed, from the allegations, the USPS would have overpaid Astra whether Astra would have "used" the certifications *or not*.

Second, the false record or statement must have "caused the government to actually pay *a false claim*, either to the defendant itself, or to a third party." *Id.* at 1327 (emphasis added). But in Count II Cullins appears to equate a false record or statement with a false or fraudulent claim. (*See* Am. Compl. ¶ 24 ("Astra knew that the certifications, and thus claims, to the USPS were false or fraudulent.")). The plain language of the statute, however, requires a person to use (1) a false record or statement to get (2) a false claim paid. *See* 31 U.S.C. § 3729(a)(2); *Hopper*, 588 F.3d at 1329 ("[U]nder § 3729(a)(2), a plaintiff must prove that the government in fact paid a false claim." (footnote call number omitted)). Thus, even assuming that Astra "used" the certifications, Cullins

does not adequately allege that Astra used the certifications *to get a false claim paid*. The Court fails to see, based on the Amended Complaint, how Astra "used" false records or statements (alleged to be the certifications in Count II) to get false claims (also alleged to be the certifications in Count II) paid. The plain language of section 3729(a)(2), as interpreted by the U.S. Supreme Court and the Eleventh Circuit, contemplates that a false record or statement be used to cause the government to pay a false claim. *See Allison Engine*, 553 U.S. at —, 128 S. Ct. at 2126; *Hopper*, 588 F.3d at 1327. If Cullins is alleging that the false records or statements are the certifications, then she must allege with more particularity just what the false claims are, and how Astra used the certifications to get the false claims paid.

**C. Count III — 31 U.S.C. § 3729(a)(7)**

Cullins alleges that, pursuant to the contracts Astra entered into with the USPS, "Astra was required to be paid solely for the services it provided," and "the contracts required that Astra return any overpayments made by the USPS." (Am. Compl. ¶ 29). Cullins further alleges that "Astra used, or caused to be used, the certifications to each of the contracts, in order to avoid paying the USPS any overpayments as required by the contracts." (*Id.* ¶ 30). Cullins alleges that "Astra knew that the certifications were false." (*Id.* ¶ 32). According to Astra, Cullins has not alleged that Astra has used a false record or statement, alleged a legally cognizable obligation, or that Astra used a false or fraudulent record to conceal any such obligation. (*See* Def.'s Mot. 7).

Under 31 U.S.C. § 3729(a)(7), the U.S. government may "recover a civil penalty from any person who 'knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.'" *United States v. PEMCO Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999). Section 3729(a)(7),

called the reverse-false-claim provision, was added to the False Claims Act in 1986 "to provide that an individual who makes a material misrepresentation to avoid paying money owed the Government would be equally liable under the Act as if he had submitted a false claim to receive money." S. REP. NO. 99-345, at 18, 1986 U.S.C.C.A.N. at 5283. In a reverse-false-claim action, "'the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.'" *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 63 n.1 (D.C. Cir. 2008) (quoting *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004)). To prevail on a reverse-false-claim action, a plaintiff must establish five elements: (1) a false record or statement and (2) the defendant's knowledge of the falsity; (3) that the defendant makes, uses, or causes to be made or used a false statement (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) materiality of the misrepresentation. *See United States v. Bourseau*, 531 F.3d 1159, 1164–71 (9th Cir. 2008) (collecting cases).

Regarding the first and second elements, Cullins alleges that the inaccurate certifications are false records or statements and that, because the USPS sent the inaccurate certifications to Astra, Astra knew of their falsity. Regarding the fourth element, the Court will assume Astra had an obligation, pursuant to its contracts with the USPS, to refund the overpayments to the government. *See Pemco Aeroplex*, 195 F.3d at 1237–38. But in Count III, much like in Count II, Cullins does not allege how "Astra used, or caused to be used, the certifications to each of the contracts, in order to avoid paying the USPS any overpayments as required by the contracts." (Am. Compl. ¶ 30). In the controlling case in this circuit, a contractor that performed aircraft maintenance for the U.S. Air Force had on its premises old and new aircraft wings belonging to the government. *Pemco Aeroplex*,

195 F.3d at 1235. In accordance with a federal regulation, the contractor could offer to buy governmental property in the contractor's possession and sell it instead of returning the property to the government. *Id.* at 1235 & n.1 (citing 48 C.F.R. § 45.601). According to the complaint, the contractor offered to buy all the aircraft wings but, on a document the contractor submitted with its offer, represented that the wings were only the old wings, which the government routinely disposed of as scrap. *Id.* at 1235. The contractor bought all the wings for $1,875 — scrap value — but later sold the new wings for $1,500,000. *Id.* at 1235–36. The Eleventh Circuit concluded that the government sufficiently alleged that the contractor, through the use of the document falsely representing the property in its possession, made and used a false record to decrease an obligation to pay the government — and, more importantly, the government explained how the contractor did so in the complaint. Cullins does not plead sufficient facts about how Astra used the certifications to conceal, avoid, or decrease paying an obligation to the government. *See Hopper*, 588 F.3d at 1324.

## III. CONCLUSION

To be sure, Cullins's allegations are unfavorable to Astra. But even if true, they do not establish that Astra has violated the False Claims Act, which "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the *claim for payment*." *Clausen*, 290 F.3d at 1311 (quoting *Harrison*, 176 F.3d at 785). Although the Court will grant Cullins leave to amend her complaint, she should do so only if she can adequately plead facts that establish each element of a False Claims Act violation. Simply put, if the certifications served only to notify Astra that it would be overpaid, and if Astra retained those overpayments, then Astra may owe the U.S. government money. But such allegations do not show Astra has violated the False

Claims Act.

It is therefore **ORDERED AND ADJUDGED** as follows:

1. The Motion **[D.E. 38]** is **GRANTED**.

2. Cullins has through **February 26, 2010** to file a Second Amended Complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of February, 2010.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record